**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PETER ZENDRAN | : | |
| VS. | : | C.A. No. 04-455ML |
| PROVIDENCE POLICE DEPARTMENT | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant in the above-entitled matter, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and moves for Summary Judgment on the grounds that there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law.

The Defendant relies on its accompanying memorandum in support thereof.

DEFENDANT,
CITY OF PROVIDENCE

By its Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 Fax

**CERTIFICATION**

I hereby certify that on this 1st day of August, 2005, I mailed a true copy of the foregoing, by regular mail, postage prepaid, to the following:

Mr. Peter Zendran
780 Reservoir Avenue, #181
Cranston, RI 02910

Carolyn M. Ranucci

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PETER ZENDRAN | : | |
| VS. | : | C.A. No. 04-455ML |
| PROVIDENCE POLICE DEPARTMENT | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. Statement of Facts

The pro-se Plaintiff is Peter Zendran. The Defendant is the Providence Police Department. Plaintiff has filed a complaint which is attached hereto as Exhibit A, alleging essentially false arrest and malicious prosecution.

The Plaintiff has not named the City of Providence as a defendant; nor has he named any individual police officer as a defendant.

His statement of claim states:

> On May 22, 2004 two undercover Providence police officers pulled out their guns and badges on me while I was taking a walk in the park at Cathedral Square around 9:20 p.m. when they asked me my date of birth and address. I refused since on February 19, 2003 I was arrested, my rights violated and personal information that was obtained from me, including my d.o.b. and address, was used illegally by Providence Police and they were never disciplined for it. One undercover then arrested me on what he said was a charge of "pissing me off" and called for backup. During the 34 hours I was held, some of my property was stolen. I was denied a chaplain since I am of the Zoroastrian faith and could not properly pray; phone call was blocked, and I was called slurs by the guards. Despite my win in Providence Municipal Court on June 23, 2004, I continue to be stalked and harassed by the

> Providence Police since December, 2002 which I have detailed.

Added to that are four pages of alleged incidents of harassment Zendran allegedly experienced from the Providence Police.

The Complaint essentially sounds in false arrest and malicious prosecution.

The Plaintiff has not conducted any discovery.

## II. Statement of the Law

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment is appropriate when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Once the moving party avers "an absence of evidence to support the non-moving party's case, the burden of production shifts to the non-movant." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To defeat a motion for summary judgment, the non-movant must tender "significant probative evidence" which, when viewed in the light most flattering to the non-movant, illumines a genuine and a material factual dispute. See First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Medina-Monoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). While the required proof need not necessarily rise to the level of admissible trial evidence, see Celotex, 477 U.S. at 324, it must consist of

something more than "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Monoz v. R.J. Reynolds Tobacco Co., 896 F.2d at 8 (1st Cir. 1990); accord Fragoso v. Lopez, 991 F.2d 878, 886 (1st Cir. 1993).

## III. Argument

### A. The Providence Police Department is not a legal entity.

The only named Defendant is the Providence Police Department. The City of Providence is not a defendant.

The Providence Police Department is not a legal entity. It is merely a department of city government.

In Retirement Board of the Employees' Retirement System of the City of Providence v. City Council of the City of Providence, 660 A.2d 721 (R.I. 1995), the City's retirement board sued the City Council, challenging the validity of an ordinance that transferred the authority to invest pension funds from the retirement board to the board of investment commissioners. The relevance of that case to the instant case is the Court's decision regarding the status and authority of the retirement board, citing Fiore v. Lynch, 639 A.2d 1052, 1054 (R.I. 1994) (per curiam), the Court stated that beginning on the first Monday in January, 1983, which was the effective date of the City's Home Rule Charter, the retirement board became a city board under § 908 of the Charter. At that point, the board's status as an independent corporate entity ceased and it became like all city departments subject to the legislative power of the City Council. Id, 727-728.

The same holds true of the Providence Police Department under Section 1000(a) of the Providence Home Rule Charter (a copy of which is attached hereto as Exhibit B).

The Police Department is a subdivision of the Department of Public Safety. Thus, it is not an independent party that can be sued.

**B. The Plaintiff has not alleged that the City has an unconstitutional policy or custom of false arrests and malicious prosecution.**

If the Court does not grant summary judgment on the basis that the police department is not a legal entity, then it should grant summary judgment on the grounds that the Plaintiff cannot make out a prima facie case of municipal liability under 42 U.S. C. § 1983.

Since this case has been brought in federal court under false arrest and malicious prosecution, it is a 42 U.S.C. § 1983 case. Since the Plaintiff has not named any individual defendant, he must prove municipal liability under 42 U.S. C. § 1983.

42 U.S.C. §1983 allows for the finding of liability upon any person who, while acting under color of state law, deprives another of his rights and privileges secured by the Constitution of laws of the United States, 42 U.S.C. §1983. It is clear that in any Section 1983 action, the plaintiff is required to prove that he has been deprived of a right "secured by the Constitution and laws, " Baker v. McCollan, 433 U.S. 137, 140 (1979). Moreover, it is well-settled that municipalities cannot be held liable on the theory of respondeat superior, Monel v. City of New York Department of Social Services, 436 U.S. 658, 663 (1978). Nor can the municipality be liable where the underlying conduct of its subordinate officers is not unconstitutional, City of Los Angeles v. Heller, 106 S.Ct. 1571, 1573 (1986).

Although municipalities are considered persons under Section 1983, the constitutional deprivation must arise out of what can fairly be said to be policy of the

municipality, Monell v. City of New York Department of Social Services, 436 U.S. 658-659, 690 (1978), see also, Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637-638 (11th Cir. 1991). To recover, the Plaintiff must show that the actions complained of are actions which the municipality has officially sanctioned or ordered, or in the alternative, the plaintiff must be able to show that the complained-of conduct was pursuant to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled that it constitutes a custom or usage with the force of the law, see City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988).

With respect to those actions which are officially sanctioned or ordered, it is an additional requirement that only those municipal officials who have "final-policy-making authority" may, by their actions, subject the government to Section 1983 liability and whether a particular official has "final policy-making authority" is a question of state law. Id., at 123. Moreover, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business and the identification of such policy-making officials is not a question of federal law and not a question of fact for the jury to decide, but is a matter for the court to decide with a reference to state law. Id. The Plaintiff must prove the existence of an unconstitutional municipal policy before a municipality can be held liable under Section 1983. Id., at 121-2.

In the instant case, the Plaintiff has not even alleged that the City has an unconstitutional policy or widespread practice of falsely arresting or maliciously prosecuting citizens. Rather, the Plaintiff alleges that the City is liable because of the

police officer's actions. This is in the nature of respondeat superior, which does not entitle the Plaintiff to liability against the City.

Moreover, the Plaintiff has not conducted any discovery in this case. Therefore, there has been no evidence of a municipal policy, custom or widespread practice of the police falsely arresting and maliciously prosecuting citizens. Thus, there is no evidence of a causal link between anything the City did and what the police did. From the record, there is no way of knowing what the City ever does with respect to the two causes of action alleged.

Therefore, summary judgment is appropriate.

Wherefore, Defendant prays that its Motion for Summary Judgment be granted.

DEFENDANT,
CITY OF PROVIDENCE

By its Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 Fax

**CERTIFICATION**

I hereby certify that on this 1st day of August, 2005, I mailed a true copy of the foregoing, by regular mail, postage prepaid, to the following:

Mr. Peter Zendran
780 Reservoir Avenue, #181
Cranston, RI 02910

Carolyn M. Ranucci

"A"

In the United States District Court

For the District of Rhode Island
(Form mailed ____________, 198 )

CA 04 455ML

Peter Zendran

/Enter above the full mane of the plaintiff or plaintiffs in this action. /

v.-

Civil Action No. ____________

Providence Police Department

FILED
OCT 21 2004
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

/Enter above the full name of the defendant or defendants in this action/

1.- Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?
Yes /_/ No /X/

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit

Plaintiffs: ____________

Defendants: ____________

2. Court /if federal court, name the district; if state court, name the county/: ____________

Exhibit A

3. Docket number: ______________________

4. Name judge to whom case was assigned: ______________________

5.- Disposition /for example: Was the case dismissed? Was it appealed? Is it still pending?/: ______________________

______________________

6. Approximate date of filing law suit: ______________________

7. Approximate date of disposition: ______________________

II. Place of Present Confinement: Not applicable

A. Did you present the facts relating to your complaint to The Warden or any of the prison officials?
Yes /__7 No /__7

B. If your answer is YES:

1. What steps dis you take? ______________________

______________________

2. What was the result? ______________________

______________________

C. If your answer is NO, explain why not: ______________________

______________________

III. Parties

/In item A below, place your name in the first blank. Do the same for additional plaintiffs, if any./

A. Name of plaintiff Peter Zendran

______________________

/ In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, position, and places of employment of any additional defendants./

B. Defendant Providence Police Department is employed as ______________________

______________________ at ______________________

C. Additional Defendants: ______________________

______________________

______________________

IV. Statement of Claim

State here as briefly as possible the facts of your case. Discribe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. /Use as much space as you need. Attach extra sheet if necessary./

On May 22 2004 two undercover Providence Police Officers pulled out their guns and badges on me while I was taking a walk in the park at Cathedral Square around 9:20 PM. When they asked me my date of birth and address I refused since on February 19 2003 I was arrested, my rights violated, and personal information that was obtained from me, including my d.o.b. and address, was used illegally by Providence Police and they were never disciplined for it. One undercover then arrested me on what he said was a charge of "pissing me off" and called for backup. During the 34 hours I was held some of my property was stolen, I was denied a chaplain since I am of the Zoroastrian faith and could not properly pray, my phone call was blocked, and I was called slurs by the guards. Despite my win in Providence Municipal Court on June 23 2004 I continue to be stalked and harassed by the Providence Police since December 2002 which I have detailed.

V. Relief

State briefly exactly what you want the court to do for you.

Make no legal arguments. Cite no cases or statutes.

That all Providence Police officers who were involved in the two arrests who violated my rights and those in the Providence Police department who deprived me of my rights be removed from their jobs and their pensions revoked. That all information that the Providence Police department has on me from the two arrests where my rights were violated be destroyed. That I recieve $100000 in compensation for the treatment I received.

within ten days from the date of mailing as recorded on pace 1, this Court will conclude you have abandoned your claim and will dismiss your petition.

Signed this 15 day of October 2004, 198

[signature]

/Signature of plaintiff or plaintiffs/

VERIFICATION

State of Rhode Island )
)
County of Providence )

Peter Zendran, being first duly sworn, under oath, says: that he is the plaintiff in this action and knows the contents of the above complaint; that it is true of his own knowledge, exceptas to those matters that are stated in it on his information and belief; and as to those matters, he believes them to be true.

[signature]

/Signature of plaintiff

Subscribed and sworn to before me this 15 day of October, ~~198~~ 2004.

Erin L Valcourt

/Notary Public or other person authorized by law to administer an oath/

ERIN L. VALCOURT
Notary Public - Rhode Island
My Commission Expires 3-15-05

Harassment Peter Zendran has received from the Providence Police

The following is a list of harassment incidents that I, Peter Zendran, have experienced from the Providence Police.

1. December 10, 2002; While helping lead a demonstration on Waterman St. against Ehud Barak Mr. Zendran was confronted by a Providence Police officer. A few minutes after the group of demonstrators dwindled from 50 to 6 and we were steel drumming on a trash can and holding signs a Providence Police officer, badge # 392, came up to me and one other demonstrator and seized the trash can we were drumming on. Mr. Zendran had known that officer from September 1998 when he assisted in disarming a man on Ives St. in September 1998.

2. February 19, 2003; Mr. Zendran is arrested on the Cranston St. bus on charges of simple assault and weapon law violation, arresting officers identified as San Antonio, badge # 604, and Bolden, badge # 496. The arrest occurred because Mr. Zendran had pepper sprayed a junkie who had made an unprovoked attack on him, causing the people on the bus to jump him, damaging his glasses, without which he is legally blind. At his arrest Bolden performed a search without consent on Mr. Zendran's backpack and robbed Mr. Zendran of that backpack where he had found three knives andMr. Zendran's Black Asian hat, a letter which was sent return to sender, and some bus schedules. Mr. Zendran was not read his Miranda rights at any time, personal information was obtained from Mr. Zendran while he was still blinded, he had to be physically guided throughout his detention at the police station, was denied to meet with a chaplain, and was released the next day on Personal Recognizance by RI District Court Chief Justice DeRobbio after pleading Not Guilty. Mr. Zendran pled Nolo me Contendere on the advice of his public defender on March 5, 2003 and the complaint against Mr. Zendran was destroyed by Court order on March 5, 2004. Internal Affairs of the Providence Police were unable to locate Mr. Zendran's stolen belongings.

3. March 10, 2003; Brown University Police detective Daniel W. Nuey sends personal information that he had obtained on Mr. Zendran to Linda Pollaro of Sherman, Texas, who had made a crank complaint against Mr. Zendran with the Brown University Police. When Mr. Zendran went to the Brown University Police station to find out the motive for detective Nuey's actions detectives Nuey and Boucher tried to provoke a fight with Mr. Zendran in their office. Mr. Zendran would later learn from Brown University Police Internal Affairs that his personal information had been obtained from the Providence Police and they had not checked to learn if the complaint against Mr. Zendran was a crank. Mr. Zendran continues to work with Brown University Police to close the Linda Pollaro case.

4. July 24, 2003; While leading a demonstration in Boston in support of Amer Jubran at his trial Mr. Zendran's neighbor's apartment is raided by the Providence Police. That day a neighbor had informed Providence Police that Mr. Zendran would be away.

5. Early September, 2003; During the first two weeks in September 2003 while walking through downtown Providence at night Mr. Zendran was harassed by several individuals driving around in an unmarked police car with police light and antenna configuration. Suspects would photograph, verbally harass, throw objects at, and attempt to run down Mr. Zendran while walking through downtown Providence.

6. January 29, 2004; Mr. Zendran and James Powell, a friend who Mr. Zendran is assisting in a legal dispute with Brown University and the Providence Police, were walking down Greene St. towards the Regency Plaza when we saw at 7:55 PM a Brown saferide van as we reached the corner of Greene and Washington Streets. As soon as we saw the van it accelerated and was followed by a Providence Police car. Mr. Powell and I turned down
Washington St. to see the Brown saferide van and Providence Police car stop in front of the Providence Police station on Washington St. and the drivers of both vehicles appeared to be talking to each other. The Brown saferide van then came back down Washington St towards us and parked by the Grace Church Apartment complex near the Cathedral Square walkway. Mr. Powell and I then walked up to the saferide van, took down the license plate number, RI Comb 4427, and the description of the van and driver. As we were doing so the Providence Police car that had followed and stopped to meet with the saferide van drive slowly by us down Washington St. with both occupants of that Providence Police car looking at Mr. Powell and myself. Mr. Powell and I then both left the area.

7. March 19, 2004; Providence Police responded to a crank complaint made by two men against Mr. Zendran after 5:00 PM. One hour before Mr. Zendran had pulled the crank callers off two women they had assaulted in Mr. Zendran's building. Several neighbors had seen a Providence Police officer knocking on Mr. Zendran's door shortly after 5:00 PM after Mr. Zendran had left.

8. April 10, 2004; Two days before Mr. Zendran is scheduled to testify in court Mr. Zendran is followed through the Providence Place mall by two Providence Police officers for no apparent reason.

9. Late April, 2004; Before Mr. Zendran is scheduled to appear in court on May 3, 2004 to testify in a case the Providence Police would come banging on Mr. Zendran's door, in some instances when Mr. Zendran was not home. Some officers told some of Mr. Zendran's neighbors he was wanted but Mr. Zendran's BCI showed no charges or warrants and Mr. Zendran showed his BCI to those neighbors.

10. May 22-24, 2004; Two days after the Providence Journal announced that Mr. Zendran would be having a signing of his new book "Victimization of the Farsi, Arab, Turanian, and Central and Western Asian Peoples" on May 24 at 6:00 PM at Ye Ol' Book Shoppe on 742 Hope St. in Providence, around 9:20 PM on May 22 while Mr. Zendran was taking a walk in Cathedral Square Park in Providence near where he is staying when he was approached by two people who appeared to be street people who soon said they were Providence Police officers who pulled out their badges and guns,

saying they would shoot if I resisted. They asked me what I was doing I told them I was talking a walk and when they asked me for ID I showed them my RIPTA disability pass, refusing to give any other information citing the unique name law. Then one of the officers told me I was being charged with "pissing him off" and both pointed to their guns threatening to shoot me if I resisted. I repeatedly asked for their names and badge numbers but only one would give me his badge, # 366 while the other handcuffed me and did a pat down search on me, refusing to return a 2 inch folding knife I had in one of my pockets. At no point were my rights read. After several minutes of arguing they radioed for a transport, and two more officers arrived, one in uniform, badge # 475 and another dressed as a street person. The officer who had handcuffed me tried to push me down the stone steps on the terrace where we were but I resisted successfully and walked resisting his attempts to trip me up. I was taken to the police station where they refused to include the knife among my personal possessions they had taken from me. I still refused to give any other information other than my name, height and weight, the officers obtaining the other information form a previous incident where I was arrested while blinded and that information had been coerced from me, was told I was being charged with disorderly conduct, and led to a cell which excluding the bed had not been cleaned. The next morning I was given 5 minutes to make a phone call, when I made my call the number I called was blocked, and during mug shots and fingerprinting was told that my mug shots and prints were not on file and I would be released if I gave my address, which I did by giving them the address they already had from the previous incident. While on my way to and during the fingerprinting the jailer repeatedly called me "retard" and "mutt". Despite what I was told I was not released but was told I was charged with disorderly conduct, failure to move, and obstruction of justice, being told I was to appear in RI 6th District Court and Providence Municipal Court the next day. During my stay I was fed only 2 hamburgers, refusing the milk, and was given some sheets of toilet paper, but not any soap or other health products despite the squalid cell conditions, nor was I or anyone else being held allowed to meet with a chaplain or anyone for religious purposes. I was released on May 24 around 7:50 AM and taken to providence municipal court. There before Judge Caprio I explained my situation, even explaining the coincidence of my book signing and arrest, after he read the report which the officers had written that I noticed contained many lies, and I pled Not Guilty. Judge Caprio set my trial on June 16. That evening at my book signing less than 10 people showed up. I noticed when I left my book signing that two Providence Police cars were parked nearby on both sides of the street, one in front of Hope St. Pizza, the other in front of Dunkin Donuts facing the wrong way down Hope St. within walking distance of where my book signing was being held.

11. June 16, 2004; At my trial in Providence Municipal Court before Judge Graziano I noticed that none of the officers involved in my arrest showed up, even after Judge Graziano summoned them to show. I refused to take the plea offered me and the trial was backdated to June 23, 2004.

12. June 23, 2004; The two arresting officers, identified as Court, badge # 366, and Schiavulli, badge # 651 showed up at Mr. Zendran's trial. The other to, Sgt. Iacobucci and Officer Doucette, badge # 475, refused to show. At my trial the two officers who

showed up were caught lying and when most of the facts were brought up the case was dismissed.

13. August 5, 2004; Mr. Zendran is followed from the Russian Submarine Museum, where he works Part-time as a volunteer, through downtown Providence by a Providence Police car while heading to get a ride to Boston, where Mr. by a Providence Police car while heading to get a ride to Boston, where Mr. Zendran is scheduled to speak later that evening.

14. August 6, 2004; While waiting for a bus on Elmwood Ave. across from the Auto Zone store Mr. Zendran notices a Providence Police SUV park in front of Providence Church of Christ for five minutes, where they could see Mr. Zendran. As the SUV drove by me I noticed that Schiavulli was in the passenger seat of the SUV, marked District 9 Supervisor.

15. August 24, 2004; While talking with Mr. Powell on the front porch of his house a Providence Police car, Plate # 2122, parks near the driveway of Mr. Powell's building and leaves two minutes later when a crowd gathers.

## ARTICLE X. CITY DEPARTMENTS*

---

***Cross references:** School department, Art. VII; finance department, Art. VIII; personnel department, Art. IX; general provisions for departments, § 1201.

---

1001. Department of public safety.
1002. Department of public works.
1003. Board of park commissioners.
1004. Department of recreation.
1005. Recreational advisory board.
1006. Department of public property.
1007. Board of contract and supply.
1008. Department of inspection and standards.
1009. Zoning board of review.
1010. Housing board of review.
1011. Building board of review.
1012. Department of planning and urban development.
1013. City plan commission.
1014. Comprehensive plan.
1015. Department of sewer management.
1016. Port commission.
1017. Department of traffic engineering.

### 1001. Department of public safety.

There shall be a department of public safety, the head of which shall be the commissioner of public safety, hereinafter referred to as the commissioner, who shall be a person holding at least a bachelor's degree from an accredited college or university and a minimum of five (5) years' supervisory experience in administration or community relations or the equivalent in training and supervisory experience. The department of public safety shall include a police department, a fire department, and a department of communications. In addition to the requirement in section 1201, subsection (e), the commissioner shall make such reports to the mayor and city council as they may request. In the event of a vacancy in the office of commissioner, the mayor shall act as commissioner of public safety until a commissioner has been appointed and approved by the city council.

(a) *Police department.* The head of the police department shall be the commissioner, who shall appoint a chief of police, who shall serve as the chief executive officer of the police department subject to the direction of the commissioner. The commissioner shall:

(1) Be responsible for the administration and discipline of the police department;

(2) Be charged with and responsible for the enforcement of all laws and ordinances and the promulgation and enforcement of rules and regulations of the police department;

(3) Have authority to appoint, remove, organize and control the officers and personnel of the police department and the police surgeons, matrons and all other attaches of the police department, subject to applicable personnel rules;

Exhibit B

(4) Have authority to make all rules and regulations necessary for the efficiency, management and direction of the police department. Said rules shall provide for the qualification, appointment, removal, organization, powers, duties, discipline and control of members of the police department;

(5) Have and exercise, together with the mayor and all police officers duly appointed, all such other powers granted by law or ordinance as have been heretofor vested in them.

(b) *Fire department.* The head of the fire department shall be the commissioner, who shall appoint a fire chief, who shall serve as the chief executive officer of the fire department subject to the direction of the commissioner. The fire department shall continue to perform the functions and services relating to fire protection and fire prevention heretofor performed and such other duties as may be required by law or ordinance. The commissioner shall:

(1) Have authority to appoint, remove, organize and control the officers and personnel of the fire department and all other attaches thereof, subject to applicable personnel rules;

(2) Have authority to make and promulgate all rules and regulations necessary for the efficiency, management and direction of the fire department. Said rules shall provide for the qualification, appointment, removal, organization, powers, duties, discipline and control of members of the fire department.

(c) *Department of communications.* The head of the department of communications shall be the commissioner, who shall appoint a director of communications, who shall serve as the chief executive officer of the department of communications subject to the direction of the commissioner. The department of communications shall have jurisdiction over all design, procurement, installation and operation of all municipal radio, television, teletype and other associated equipment. The commissioner shall:

(1) Have authority to make and promulgate rules and regulations for the efficiency, management and direction of the department of communications;

(2) Be responsible, through the director of communications, for the complete operation of the department of communications and for the design, procurement, installation and proper operation of all the equipment under its jurisdiction;

(3) Insure that close liaison is maintained with other city departments and that they are provided with technical advice and specifications for the procurement of new communications equipment;

(4) Insure the proper discharge of any and all additional responsibilities which may from time to time be assigned to the department of communications by the mayor or the city council.

**1002. Department of public works.**

There shall be a department of public works, the head of which shall be the director of public works, who shall be a person holding a degree in engineering, with at least five (5) years'